1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

IN RE COMMVAULT SYSTEMS, INC.
SECURITIES LITIGATION

                    MASTER FILE NO. 14-5628 (PGS)

_____


                    OCTOBER 30, 2015
                    CLARKSON S. FISHER COURTHOUSE
                    402 EAST STATE STREET
                    TRENTON, NEW JERSEY   08608




B E F O R E:       THE HONORABLE PETER G. SHERIDAN
                   U.S. DISTRICT COURT JUDGE
                   DISTRICT OF NEW JERSEY



**COURT'S OPINION ON MOTION TO DISMISS**



                    Certified as true and correct as required
                    by Title 28, U.S.C. Section 753
                    /S/ Francis J. Gable
                    FRANCIS J. GABLE, C.S.R., R.M.R.
                    OFFICIAL U.S. REPORTER
                    (856) 889-4761


*United States District Court*
*Trenton, New Jersey*

THE COURT:  This is a motion to dismiss the complaint under Federal Rule 12(b)(6) by defendants Commvault and their executives Mr. Hammer and Mr. Carolan.  The lead plaintiff is Arkansas Teacher Retirement Systems.  It purchased Commvault stock during the class period.  In reviewing this motion, oral argument was heard and during the motion the defendants' attorney honed in on two issues; one concerned the credibility of the confidential witnesses set forth in the complaint, and the second issue was with issues set forth underlying the use of Generally Accepted Accounting Principles (GAAP) utilized in the complaint.  As such, the Court will focus on those two issues.

Since this is a securities fraud litigation matter, the Court will apply the 12(b)(6) rule, and the heightened pleading standard under Rule 9(b), as well as the PLSRA heightened pleadings standard.  The Court sets forth these standards below.

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court is required to accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, and to view them in a light most favorable to the non-moving party.  That's *Oshiver v. Levin*, 38 F.3d 1380, 1384 (3d. Cir. 1994).  To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true to "state a claim to relief that is

plausible on its face." That's *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also, *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). In order to survive a motion to dismiss, the complaint must allege facts that give rise to a plausible claim, and raise the right to relief above the speculative level. That's *Ashcroft*, 556 U.S. 662, 664; and *Twombly*, 550 U.S. 544, at 555. The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. That's *Semerenko v. Cendant, Corp.*, 223 F.3d 165, 177 (cert. denied 531 U.S. 1149, 2001).

In addition to the 12(b)(6) standard, securities fraud claims are subject to heightened pleading requirements under Rule 9(b). Rule 9(b) provides that all averments of fraud or mistake shall be stated with particularity. See, *In re Burlington Coat*, 114 F.3d 1410, 1417 (3d. Cir. 1997). As such, the plaintiffs must assert the who, what, when, where and how the fraud occurred. See, In re Advanta Corp. Securities Litigation, 180 F.3d 525, 534 (3d. Cir. 1999). Although Rule 9(b) falls short of requiring every material detail of the fraud, such as date, location and time to be set forth, plaintiffs must use alternative means of injecting precision, and some measure of substantiation in their allegations of fraud. *In re Rockefeller*, 311 F.3d 198, 216 (3d. Cir. 2002). Failure to meet the threshold pleading

requirements of 9(b) justifies dismissal of the case under Rule 12(b)(6). See, *California Public Employees v. Chubb*, 394 F.3d 126, 145 (3d. Cir. 2004). In addition to the 9(b) requirements, the plaintiffs must also comply with the heightened pleading requirements of the Private Securities Litigation Reform Act, 15 U.S.C. Section 78u-4(b). The PSLRA "imposes another layer of factual particularity to the allegations of securities fraud." See, *Rockefeller*, 311 F.3d at 217. Generally, the PSLRA requires that a complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." (Scienter.) 15 U.S.C. Section 78u-4(b)(2).

When looking at a securities fraud claim, generally Section 10(b) of the Securities Act is at issue. The act makes it unlawful "to use or employ in connection with the purchase or sale of any security...any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the commission may prescribe as necessary or appropriate in the public interest." 15 U.S.C. Section 78j(b). Generally, the rules under **12(b)(5)** prohibit the use of untrue statements of fact or to omit material facts from

investors.  In security fraud, the basic elements that the plaintiff must allege are:  (1) material misrepresentation or omission by defendant; (2) scienter, i.e., a wrongful state of mind on the part of the defendant; (3) in connection with the purchase of a sale of security; (4) reliance, often referred to in fraud on the market cases as transaction causation; (5) economic loss; and (6) loss causation, a causal connection between the material misrepresentation and the loss." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).

As noted earlier, the defendants honed in on two arguments; one concerning the credibility of the confidential witnesses, and secondly, the GAAP principle issue.  According to the defendants, the plaintiffs must plead "who was involved, where the events took place, when the events took place, and why any statements were misleading."  See *Rockefeller,* 311 F.3d at 217.  Here, the defendants assert that the plaintiffs failed to aver when any of the confidential witnesses were employed, the dates and the sources acquired, when they acquired the information, or how any of the former employees had access to such information; and the Court should dismiss the complaint because with lack of such information the complaint is insufficient, and the Court would be speculating on whether anonymous sources obtained the information they purport to possess by firsthand knowledge.  In short, the defendants attack the CWs'

credibility.  In applying the standards, the Court disagrees with the defendants' argument.  The defendants argue that the plaintiffs have not met the *Chubb* standard.  The Court reviewed the *Chubb* case and it appears that the plaintiffs have sufficiently alleged the confidential witnesses, their dates of employment, their job description and their relevant responsibility to whom they reported, sufficiently sets forth the information that was obtained.  For example, Confidential Witness 1 was a Director of Strategic Partner Development from October 11, 2011, to September 2014, and was responsible for developing Commvault's relationship with NetAp, an alternative distribution partner that defendants represented would replace Dell.  CW-1 alleged in the complaint that Commvault's management knew "based on the pipeline and losing Dell business, that we're off our numbers for the fiscal year."  He learned this knowledge at the July 2013 meeting in Chicago where Commvault's senior executives, including Carolan and Hammer, participated.  CW-1 alleges that Hammer announced for the first time that business was dropping off, and that the growth rate of sales was far less than it previously had been.

Similarly, CW-3, a Regional Sales Director in the Southeast from August 2010 until March 2014, indicated that approximately half of Commvault's salespersons quit in 2013 as a result of the loss of Dell as a customer, and their salespersons' inability to meet unrealistic sales quotas.  It

seems to me that the manager of sales reps in an eight state area would most likely know of the sales force attrition rates.

Moreover, CW-8, National Partner Manager, was responsible for developing sales strategies.  He most likely had firsthand knowledge that there were no deals in the pipeline to replace Dell, as the Court may infer same from his job title.  In addition, CW-6, a Territory Account Executive, had firsthand knowledge of the effects in the field resulting from Commvault's transition as Dell terminated.  In addition, CW-5, a Regional Manager, had firsthand knowledge of the sales cycle, in that it takes years to generate larger revenues from new partners in order to equal or surpass the revenues achieved as was generated by Dell.  To the Court, all of those witnesses set forth a plausible complaint.

Defendants also argue that the CWs were low level employees who could not possess the information.  From general experience, employees in the marketing departments, especially at the level of the confidential witnesses, most likely had firsthand knowledge as to the impact occurring on the ground, and whether Commvault could meet its growth targets.

Defendants also argue that the CWs were relying on gossip.  To me, in general, the sales force would know the pulse of the company, and would often communicate among the different sales territories in order to facilitate leads and

to learn about problems the company was experiencing.  It seems very difficult to believe that sales professionals would be relying solely on gossip.  To me, they were most likely relying upon sales activity.  As a result, to this Court the first argument of the defendants to dismiss the complaint seems non-meritorious.

The second issue is the GAAP issue.  Defendants contend that the plaintiffs have failed to plead that any qualified person could have firsthand knowledge of GAAP violations.  Generally, the GAAP problem is that revenue received by Commvault was deferred for a period of time, and then later credited on the financial statements of Commvault. By deferring the revenues to later quarters minimized any loss of revenues in its reports to investors.  The plaintiffs allege the revenues were deferred in order to allegedly show better sales revenues in months when sales were actually declining.

At oral argument, defendants argued that there is nothing in the complaint that alleges the sales were earned in an earlier quarter, and then delayed.  That argument is made because the plaintiffs were relying on what they captioned as "cookie jar" accounting, which has no underlying support from an accountant or from a financial consultant.  As such, the deferral of revenues as being a violation of GAAP is unsupported by any accountant.  Such an issue requires some

*United States District Court*
*Trenton, New Jersey*

technical support in the pleading in order to support the allegation. As we know from the 12(b)(6) standard, the Court will "not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations." See, *Iqbal*, 556 U.S. at 678-79. So, it seems to the Court that the allegation regarding a GAAP violation is unsupported in the record, as it is framed by the plaintiffs. This GAAP violation is essential to the entire complaint, because the scheme included statements of Commvault executives indicating that their market share would remain the same or increase despite the loss of Dell's revenue. Plaintiffs allege this was done by the deferral of revenue over a period of time. Without the GAAP violation being shown, the entire scheme and the lawsuit would fail. The plaintiffs could show the impropriety of this deferral of revenues if they could demonstrate that the earnings that were allegedly deferred could be shown to have been earned in prior quarters. As such, the deferred reporting of sales must be supported by appropriate facts.

In conclusion, the complaint is dismissed without prejudice, and the plaintiffs are given 30 days to amend the complaint in order to demonstrate the GAAP violation.

*United States District Court*
*Trenton, New Jersey*